IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:11-2064-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JAMES LEWIS WILLIAMS | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1157). The court denied the defendant's first motion for compassionate release[2] and the defendant now returns to this court with a new motion asserting many of the same arguments he raised in his earlier motions.

Specifically, the defendant contends that his various medical conditions, coupled with the ongoing COVID-19 pandemic, constitute extraordinary and compelling reasons for consideration of his immediate release. The defendant also contends that if sentenced today, he would no longer be considered a career offender, thereby resulting in a significantly lower sentence because of the intervening changes in the sentencing laws.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

[2] The defendant's original First Step Act (FSA) motion pursuant to § 404(b) was denied because the defendant was sentenced after 2010, so that provisions of the Fair Sentencing Act of 2010 were already imposed in his original sentence in 2012. The defendant's second FSA motion was denied because the defendant had not exhausted his administrative remedies. His request for relief under the CARES Act was also denied because this court does not have the authority to release the defendant to home confinement. The defendant's third FSA motion was denied in March 2021 (ECF No. 1137) after the court did not find an extraordinary and compelling reason for his compassionate release.

1

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the

court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The defendant attests that he submitted a request for a reduction in his sentence to the Warden on May 12, 2022 and such request was denied. Thus, the court will proceed to review the matter on the merits.

DISCUSSION

I. *The Defendant's Medical Condition*s

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence

reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

The defendant's claimed medical conditions include Type II diabetes, hypertension, stomach ulcers, and high cholesterol. He also states that he is obese, having a Body Mass Index (BMI) of 60. He contends that the COVID-19 pandemic is ongoing within the BOP and that the problem is particularly acute at the Federal Correctional Institution in Montgomery, Alabama where he is housed. The defendant has received two Moderna vaccination doses and two Pfizer booster doses. He contracted COVID in 2020 and appears to have successfully recovered.

In response, the government contends that these medical conditions are not sufficient to constitute extraordinary and compelling reasons for the defendant's release. The government also points out that the defendant has, in some cases, refused medical treatment while at the BOP which would have provided some benefit to some of his medical ailments.[3]

The medical records attached to the government's memorandum support its position in some respects. However, the fact remains that the defendant does suffer from several medical ailments, including a BMI of 60, which is considered morbidly obsese. After reviewing the defendant's medical records, the court will assume that the defendant's current medical conditions, in light of the ongoing COVID-19 pandemic, constitute an extraordinary and compelling reason for consideration of his release.

But the court's inquiry does not end here. This court must now turn to an individualized assessment of the defendant's situation, with particular emphasis on the §3553(a) sentencing factors, the defendant's post-sentencing behavior, and other relevant information. In addition, this court must also address the defendant's second argument that he is no longer a career offender and that his sentence today would be radically different than the one imposed in 2012.

---

[3] The government refers to the defendant's medical records (Ex. 1) to suggest that the defendant has refused to take and follow his insulin and other diabetic medication regime and that he has an unhealthy diet.

*Factors Under § 3553(a)*

1. *Nature and Circumstances of the Offense.* In 2011, the defendant was charged in a multi-defendant, 47-Count Second Superseding Indictment involving drug dealing, money laundering, and other offenses. On April 27, 2012, the defendant pleaded guilty in a written Plea Agreement (ECF No. 431) to charges of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 851 (Count 1); and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a) (Count 47).

The government filed an Information (ECF No. 306) notifying the defendant that he was subject to enhanced penalties pursuant to 21 U.S.C. § 851 (ECF No. 306). His prior convictions included: (1) possession with intent to distribute crack/cocaine—sentenced to 10 years on 12/11/97; (2) possession with intent to distribute crack cocaine—sentenced to 10 years on 12/11/1992; and (3) possession with intent to distribute marijuana, 3rd—sentenced to 10 years.

His convictions for distribution of cocaine and distribution of cocaine within the proximity of a school (1989); and possession with intent to distribute crack, 3rd offense (1997), served as predicate offenses for his career offender designation.

A Presentence Report (PSR) (ECF No. 626) was prepared by the United States Probation Office (USPO) using the 2011 Guidelines manual. Under the United States Sentencing Guidelines (USSG) provisions, the defendant was determined to be a career

offender resulting in a total offense level of 35 and a criminal history category was VI.[4] He was held accountable for 51.09 kilograms of cocaine powder which yielded a statutory sentence of life imprisonment on Count 1, and 20 years on Count 47. This court ultimately sentenced the defendant to life imprisonment.

The defendant filed a notice of appeal of his conviction and sentence with the Fourth Circuit Court of Appeals, but subsequently moved to voluntarily dismiss the appeal which the Fourth Circuit granted (ECF No. 693).

On March 7, 2017, the government filed a motion for a reduction of the defendant's sentence pursuant to Fed. R. Crim. P. Rule 35. The court granted the motion and reduced the defendant's sentence to 292 months.

On September 29, 2017, the defendant was granted another reduction in his sentence upon motion of the government. His sentence was reduced from 292 months to 262 months. Finally, on February 15, 2018, the defendant's sentence was reduced from 262 months to 210 months[5] based on USSG Amendment 782.

2. *History and Characteristics of the Defendant*. The defendant is 57 years old. He was born in Newberry, South Carolina and primarily raised by his mother. He has 3 maternal sisters and 2 brothers. He is single having never been married and has one child.

---

[4] Although the PSR indicates that the defendant's total offense level was 37, at sentencing this court reduced it 2 levels to 35 after the defendant objected to the PSR and the government conceded the defendant was correct on an issue.

[5] The government's brief incorrectly states that the defendant is currently serving a sentence of 292 months. As noted above, the defendant's sentence has been reduced on several occasions resulting in a reduction from life to 292 months, to 262 months, and to 210 months.

According to the PSR prepared in 2012, the defendant reported having high blood pressure and that he had been a Type II diabetic for the past 15 years. He also said he suffered from arthritis and wheezing from Asthma.

The defendant graduated from high school in 1982. He was self-employed since 2007 with a car detailing business.

*Post-Sentencing Conduct*

The defendant attests that he has served approximately 130 months (74%) of his 210-month sentence. Actually, the percentage is closer to 62% but in this court's estimation, the difference is inconsequential. His expected release date is August 2026 and he is currently housed at the Federal Prison Camp in Montgomery, Alabama.

The defendant has had numerous disciplinary infractions since his incarceration, but none in almost 2 years:[6]

- March 2020 — refusing to obey an order (level 307);
- August 2016 — fighting with another person (level 201);
- March 2016 — refusing a work assignment (level 306);
- October 2013 — refusing to obey an order (level 307); failing to stand count (level 320);
- September 2013 — refusing work (level 306)

---

[6] Violations at the BOP are categorized as 100-level, 200-level, 300-level or 400-level, with 100-level violations being the most serious.

Commendably, the defendant has completed his GED and taken a variety of education courses including retirement planning, goal setting, wellness education, ACE commercial drivers education, typing, parenting, custodial maintenance while incarcerated. He also has an extensive work detail history including working in food service, camp service, textile sewing, orderly duties, and admissions and orientation.

The defendant attests that he participated in the NRDAP (Non-Residential Drug Abuse Treatment Program) as well as First Step Act programming that will allow him to go into supervision in 2025. He also says that his program summary report notes that he is "release eligible" under 18 U.S.C. § 3621 and that he is at a low risk for recidivism. If released, he plans to live with his brother and work for a trucking company while he obtains his CDL license.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as extremely serious, fully supportive of a significant sentence. As noted earlier in this order, the defendant was originally sentenced to life imprisonment, but then benefitted from 3 reductions by this court down to a current sentence of 210 months.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment. Releasing the defendant would not promote respect for the law.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The defendant's crimes were committed when he at least 45 years old, so his advanced age does not sway this court's consideration of potential future crimes.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the sentences imposed on similarly situated defendants who committed similar drug conspiracy crimes, the court finds no unwarranted disparity.

In sum, the § 3553(a) factors discussed above militate against a sentence reduction at this time.

## II. *Intervening Changes in Sentencing Laws*

The defendant contends that subsequent changes in sentencing laws justify his compassionate release at this time. He relies on the Fourth Circuit Case of *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). Specifically, the defendant argues that if sentenced today, he would no longer be considered a career offender because his offense of conviction was *conspiracy* to engage in narcotics offenses. Under *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), *conspiracy* to commit a drug offense no longer qualifies as a predicate offense under the career offender Guidelines.

Although not addressed by the government in its brief *Norman* has been held by the Fourth Circuit Court of Appeals to be non-retroactive.

This leaves the defendant to rely on the holdings of *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), which authorizes this court to take into consideration intervening changes in sentencing law, even those declared to be non-retroactive, in a compassionate release request. In *McCoy*, the Fourth Circuit Court of Appeals authorized district courts to exercise their discretion to reduce a defendant's sentence when certain compelling factors are present. In *McCoy*, the defendants were all at young age at the time of the commission of their offenses; they all had minor criminal records; and they received severe terms of incarceration pursuant to the then-applicable "stacking" regime of imposing sentences in § 924(g) convictions.

But simply saying that *McCoy* authorizes this court to reduce the defendant's sentence does not necessarily mean that this court is required to do so. In *McCoy*, the Fourth Circuit stressed several important factors that are not present in this case. As noted above, the defendants in *McCoy* were all teenagers or in their early 20s. Here, the defendant was at least 45 years of age at the time of the commission of the crimes.

The defendants in *McCoy* had virtually no criminal record. Here, the defendant's criminal record includes the following convictions: possession of crack cocaine and simple possession of marijuana (1988); distribution of cocaine within the proximity of a school (1988); petit larceny (1996); possession with intent to distribute crack cocaine, 3rd;

distribution of crack, 3rd, and possession with intent to distribute marijuana, 3rd (1997); and simple possession of marijuana, 3rd, possession of cocaine, 3rd, possession with intent to distribute crack/cocaine, and failure to stop for a blue light (2010). The defendant's criminal convictions resulted in a criminal history point score of 9 which established a criminal history category of IV. Because the defendant was determined to be a career offender, his criminal history category became VI under USSG § 4B1.1(b).[7]

Moreover, in *McCoy*, the "unstacking" of successive § 924(c) mandatory consecutive sentences resulted in a huge disparity in the sentence imposed at the time compared to the sentencing were it to occur at the present. That is clearly not the case here.

This court has consulted with the USPO to determine the effect of a recalculation of the Guidelines with the defendant's career offender status removed. The USPO has provided this court with the following analysis which this court finds to be accurate and hereby adopts. As to the defendant's controlled substance offense (Count 1), the defendant was held accountable for 51.09 kilograms of cocaine resulting in a base offense level of 34. Because he possessed a weapon in connection with the crime, his offense level was increased by 2 levels to 36. As to the money laundering offense (Count 47), the base offense level is 36. Since the defendant was convicted of 18 U.S.C. § 1956, his level is increased by 2 levels, resulting in an adjusted offense level of 38. The combined adjusted offense level for both

---

[7] The defendant's case is different from those defendants in *McCoy* for other reasons as well. The *McCoy* defendants' post-sentencing behavior while incarcerated was exemplary. Here, the defendant has incurred several disciplinary infractions while incarcerated as noted earlier in this order.

offenses is also 38. The adjusted offense level is then reduced by 3 levels for acceptance of responsibility, resulting in a total offense level of 35.

Based on a total offense level of 35 and criminal history category of IV, the Guideline imprisonment range is 235 to 293 months before any departure and before considering the statutory mandatory minimum in this case which is 25 years or 300 months. Accordingly, if the defendant were sentenced today, his Guideline sentence would be 300 months due to the statutory mandatory minimum.

On April 24, 2017, this court granted a 2-level departure to the defendant for substantial assistance pursuant to Rule 35(b). If this court were to grant a similar departure during a sentencing modification, it would be required to depart from the lowest level in the criminal history category IV, which includes a sentence of 300 months. That offense level is 36. Therefore, if the court grants a 2-level departure from an offense level 36, the new total offense level after the departure would be 34, the criminal history would remain IV, and the Guideline imprisonment range would become 210 to 262 months.

It can readily be seen then that if the defendant were sentenced today without the career offender enhancement, the low-end of the defendant's applicable Guideline range (after the downward departure motion mentioned above) would be the exact sentence he is currently serving—210 months. Accordingly, the intervening change in the law under *Norman* affords no basis for disturbing the defendant's sentence. On this record, the court determines that the defendant has not shown that intervening changes in the sentencing law

justify a reduction in his sentence.

## CONCLUSION

For the foregoing reasons, this court determines that although the defendant has shown an extraordinary and compelling reason for his immediate release based upon his medical conditions, the court would nevertheless exercise its discretion to deny the motion after careful consideration of the § 3553(a) factors, coupled with the defendant's post-sentencing conduct, and even considering the intervening *Norman* decision. Moreover, the § 3553(a) factors weigh heavily in favor of leaving the defendant's sentence undisturbed. Accordingly, the defendant's motion (ECF No. 1157) is respectfully denied.

IT IS SO ORDERED.

December 21, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge